**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **CDR STRAINERS & FILTERS, INC.** | § | **CASE NO. 16-31997-H5** |
| | § | |
| **DEBTOR.** | § | **(SMALL BUSINESS CHAPTER 11)** |

**CHAPTER 11 SMALL BUSINESS PLAN OF REORGANIZATION BY
CDR STRAINERS & FILTERS, INC.**

CDR Strainers & Filters, Inc. ("Debtor") files this Chapter 11 Small Business Plan to address the Claims asserted against and the Equity Interests of the Debtor. Votes will tabulated with respect to the Debtor's Plan and Claims will be classified and Distributions in accordance with the Plan. To the extent the Debtor does not receive sufficient votes for confirmation of its Plan, the Plan may be withdrawn.

**ALL HOLDERS OF CLAIMS OR INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY. ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING ON THE PLAN.**

**CORRAL TRAN SINGH, LLP**
Susan Tran
1010 Lamar Street
Suite 1160
Houston, Texas 77002
Ph: (832) 975-7300
Fax: (832) 975-7301
Counsel for the Debtor

## Table of Contents

I.    PLAN SUMMARY ................................................................................................ 3

II.   DEFINITIONS ..................................................................................................... 3

III.  CLASSIFICATION OF CLAIMS AND INTERESTS ....................................... 9

IV.   IMPAIRMENT OF CLASSES AND RESOLUTION OF CLAIM CONTROVERSIES. 11

V.    TREATMENT OF IMPAIRED CLASSES ........................................................ 11

VI.   TREATMENT OF UNIMPAIRED CLASSES ................................................. 15

VII.  MEANS OF IMPLEMENTATION OF PLAN ................................................. 15

VIII. CLAIM OBJECTION PROCEDURES, TREATMENT OF DISPUTED CLAIMS, AND PROCEDURES FOR ASSERTING CLAIMS .................................................. 15

IX.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES. ........................ 16

X.    REJECTION OF CLASSES OF CLAIMS. ....................................................... 17

XI.   EFFECT OF CONFIRMATION ....................................................................... 18

XII.  RETENTION OF JURISDICTION .................................................................. 20

XIII. MISCELLANEOUS PROVISIONS ................................................................. 20

# I.     PLAN SUMMARY

This Plan of Reorganization ("Plan") under Chapter 11 of the United States Bankruptcy Code proposes to pay the creditors of CDR Strainers & Filters, Inc., Debtor and Debtor-in-Possession ("Debtor") from the cash flow from continued operations.  This Plan provides for classes of secured claims, unsecured priority claims, general unsecured claims, and equity security holders.  Unsecured creditors holding allowed claims will receive distributions from the net profits of the Debtor's continued operations. Additionally, this Plan provides for the payment of administrative and priority claims.  All creditors and equity security holders should refer to the provisions of this Plan below for information regarding the specific treatment of their claims.  A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.  **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

# II.     DEFINITIONS

## 2.1.     Administrative Claim.

Any cost of expense of administration of the Chapter 11 case incurred on or before the Effective Date entitled to priority under section 507(a)(2) and allowed under section 503(b) of the Bankruptcy Code, including but not limited to, any actual and necessary expenses of preserving the Debtor's estate, including wages, salaries, or commissions for services rendered after the commence of the Chapter 11 case, certain taxes, fines, and penalties, any actual and necessary post-petition expenses of operating the Debtor's business, certain post-petition indebtedness or obligations incurred by or assessed against the Debtor in connection with the conduct of its business, or for the acquisition or lease of property, or for providing services to the Debtor, including all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against the Debtor's estate.  With respect to Administrative Claims allowed pursuant to sections 503(b)(2)-(b)(9), there shall be an Administrative Claim against the Debtor only to the extent upon entry of a Final Order approving such Administrative Claim following the filing of a motion or application prior to the Administrative Claim Bar Date.

## 2.2.     Administrative Claim Bar Date.

Aside from quarterly United States Trustee fees and Professional Fee claims, applications for the allowance of an Administrative Claim shall be twenty (20) days after the Effective Date unless otherwise provided by a Final Order.

## 2.3.     Allowed Administrative Claim.

An Administrative Claim to the extent it is or becomes an Allowed Claim.

## 2.4.     Allowed Amount.

The amount of an Allowed Claim.

## 2.5.     Allowed Claim.

An Allowed Claim is any Claim which has been

(1) scheduled by the Debtor pursuant to Bankruptcy Rule 1007 and
      (a) not scheduled as disputed, contingent, or unliquidated,
      (b) as to which no Proof of Claim has been filed, and
      (c) where no objection to such scheduled Claim has been filed;
(2) where a timely Proof of Claim has been filed as of the Bar Date and no objection thereto has been made; or
(3) a Claim allowed by a Final Order.

**2.6.**      **Allowed General Unsecured Claim.**
A General Unsecured Claim to the extent it is or becomes an Allowed Claim.

**2.7.**      **Allowed Priority Non-Tax Claim.**
A Priority Non-Tax Claim to the extent it is or becomes an Allowed Claim.

**2.8.**      **Allowed Priority Tax Claim.**
Any Claim, to the extent such Claim is an Allowed Claim, and entitled to priority per section 507(a)(8) of the Bankruptcy Code.

**2.9.**      **Allowed Secured Claim.**
A Secured Claim to the extent such Claim is an Allowed Claim, and the Lien securing such Claim has not avoided pursuant to the Bankruptcy Code.

**2.10.**      **Allowed Subordinated Claim.**
An Subordinated Claim to the extent it is or becomes an Allowed Claim.

**2.11.**      **Allowed Unsecured Claim.**
An Unsecured Claim to the extent it is or becomes an Allowed Claim.

**2.12.**      **Avoidance Action.**
Any and all rights, claims, causes of action, arising under Sections 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b), 553, or 724 of the Bankruptcy Code.

**2.13.**      **Bankruptcy Code.**
Title 11 of the United States Code as effective on the Confirmation Date.

**2.14.**      **Bankruptcy Court.**
The United States District Court for the Southern District of Texas, Houston Division, having jurisdiction over this Chapter 11 case, or any appellate or other court that is competent to exercise jurisdiction over confirmation of this Plan.

**2.15.**      **Bar Date.**
August 15, 2016.

**2.16.**      **Cash.**
United States dollars.

### 2.17.    Cause of Action.

Any Claim or cause of action, legal or equitable, whether arising under contract or tort, federal or state law, including Avoidance Actions, now owned or after acquired by the Debtor, whether such Claim or cause of action is commenced prior to or after the Petition Date.

### 2.18.    Chapter 11 Case.

Case number 16-31997 filed under Chapter 11 of the Bankruptcy Code by the Debtor and pending before the Bankruptcy Court.

### 2.19.    Claim.

Any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or the right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

### 2.20.    Claimant.

Any person or entity asserting a Claim against the Debtor, its property, or its Estate.

### 2.21.    Collateral.

Any property or interest in property of the Estate subject to a Lien that is not subject to avoidance under the Bankruptcy Court or otherwise invalid under the Bankruptcy Code or applicable state law.

### 2.22.    Confirmation Date.

The date upon which the Bankruptcy Court enters the Confirmation Order.

### 2.23.    Confirmation Hearing.

The hearing to be conducted by the Bankruptcy Court to determine whether to approve the Plan.

### 2.24.    Confirmation Order.

The Order of the Bankruptcy Court approving and confirming the Chapter 11 Plan in accordance with the Bankruptcy Code.

### 2.25.    Creditor.

Any person or entity that holds a Claim against the Debtor that arose or is deemed to have arise on or prior to the Petition Date, including an Allowed Claim against the Debtor's Estate of any kind as provided by sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.

### 2.26.    Debtor.

The Debtor is CDR Strainers & Filters, Inc.

### 2.27.    Debtor in Possession.

The Debtor in its capacity as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

**2.28.     Deficiency Claim.**

A General Unsecured Claim to the extent that the  amount by which an Allowed Secured Claim exceeds the value of any Collateral securing such Claim as may be determined by the Bankruptcy Court in accordance with sections 506(a) of the Bankruptcy Code.

**2.29.     Disclosure Statement.**

The Disclosure Statement with respect to this Plan, including all exhibits and schedules attached, filed by the Debtor and approved or conditionally approved by the Court pursuant to § 1125 of the Bankruptcy Code, as may be amended or supplemented.

**2.30.     Disputed Claim.**

A Claim against the Debtor as to which an objection has been filed on or before the deadline for objecting to a Claim and which objection has not been withdrawn, settled, or otherwise resolved by Final Order.

**2.31.     Distribution.**

The Cash or other property required by the Plan to be distributed to the holders of Allowed Claims.

**2.32.     Distribution Date.**

The date on which distributions are made pursuant to the terms of the Plan to Holders of Allowed Claims.

**2.33.     Effective Date.**

The date that the Confirmation Order becomes a Final Order.

**2.34.     Equity Interest or Interest.**

Equity Interest means a share in a corporation, interest of a limited partner in a limited partnership; or warrant or right, other than right to convert, to purchase, sell, or subscribe to a share, security, or interest of a corporation or limited partnership.

**2.35.     Equity Interest Holder or Interest Holder.**

A holder of an equity security or equity interest of the Debtor.

**2.36.     Estate.**

The estate created upon the filing of the Chapter 11 case pursuant to section 541 of the Bankruptcy Code, along with all rights, claims, and interests of the Debtor that arose prior to the Petition Date.

**2.37.     Final Order.**

An order or judgment which has not been reversed, vacated, or stayed and as to which the time to appeal or move for new trial or rehearing has expired.

**2.38.    General Unsecured Claim.**

A Claim other than a Secured Claim, an Administrative Claim, a Priority Claim, or a Subordinated Claim.

**2.39.    Governmental Unit.**

The term "Governmental Unit" shall have the same meaning as provided in section 101(27) of the Bankruptcy Code.

**2.40.    Interest Holder.**

Any holder or owner of an Equity Interest.

**2.41.    Lien.**

A charge against or interest in property to secure payment of a debt or performance on an obligation which has not been avoided under the Bankruptcy Court or applicable state law.

**2.42.    Net Profits.**

The Debtor's gross yearly income less all necessary business expenses to be deposited into a separate bank account at the end of the calendar year for the benefit of the Holders of Allowed General Unsecured Claims.  Upon written request by a holder of an Allowed General Unsecured Claim to the Debtor, Debtor will provide an accounting of its gross yearly income and business expenses for the immediate fiscal year prior to the disbursement to the holder of the Allowed General Unsecured Claim.

**2.43.    Notice of Default.**

Notice to be transmitted to Debtor and its Registered Agent, as provided by the records of the Texas Secretary of State, via certified mail return receipt requested and First Class U.S. Mail.

**2.44.    Petition Date.**

April 18, 2016.

**2.45.    Plan.**

This Chapter 11 Plan of Reorganization, as may be amended or modified from time to time.

**2.46.    Plan Rate.**

The rate of interest that will be paid on Claims or Classes that specify interest only to the extent that the Plan specifies that such Claim or Class will receive interest.  For all non-tax claims, the Plan Rate shall be 5% simple interest, unless otherwise specifically provided in the Plan.  The Plan Rate for tax claims shall be the applicable non-bankruptcy statutory rate as of the calendar month in which the Confirmation Order is entered.  Interest shall be calculated from the Petition Date to each Payment Date.

**2.47.     Plan Ballot.**

The form of ballot that the Debtor will transmit to Creditors and Interest Holders who are, or may be, entitled to vote on the Plan.

**2.48.     Plan Documents.**

Any and all documents contemplated to be executed in connection with this Plan.

**2.49.     Priority Claim.**

Any Claim to the extent entitled to priority as provided in section 507(a) of the Bankruptcy Code.

**2.50.     Priority Non-Tax Claim.**

Any Claim (other than an Administrative Claim or Priority Tax Claim) to the extent entitled to priority in payment under section 507(a) of the Bankruptcy Code including, but not limited to (a) Employee wage Claims for wages, salaries, or commissions, including vacation, severance or sick leave pay, earned within one hundred and eighty (180) days prior to the Petition, to the extent of $10,950 per employee; (b) Claims for contribution to an employee benefit plan as provided in section 507(a)(5) of the Bankruptcy Code; (c) Claims for deposits of up to $2,425 placed by consumers with the Debtor as provided in section 507(a)(7) of the Bankruptcy Code; (d) Claims based upon any commitment by the Debtor to a Federal depository institution regularly agency to maintain the capital of an insured depository institution as provided in section 507(a)(9); and (e) Claims for death and personal injury resulting from the operation of a motor vehicle or vessel if such operation was unlawful because the Debtor was intoxicated from using alcohol, a drug, or another substance as set forth in section 507(a)(10).

**2.51.     Priority Tax Claim.**

Any Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.  A claim based upon an assessed *ad valorem* tax that is secured by a statutory lien on property that was administered during this Chapter 11 is a Secured Claim to the extent of the value of the property administered.

**2.52.     Pro Rata.**

The proportion that the dollar amount of an Allowed Claim or Allowed Interest in a Class bears to the aggregate amount of all Allowed Claims or Allowed Interests in such Class.

**2.53.     Professional Fee Claims.**

Administrative Claims for Professional Fees from the Petition Date through the Effective Date, as well as fees, expenses, and other reimbursable costs incurred after the Effective Date in connection with the preparation and filing of fee applications with the Bankruptcy Court in respect of a Professional Fee Claim.

**2.54.     Professional Fees.**

All fees, costs, and expenses incurred in this Chapter 11 case by any professional person (within the meaning of sections 327, 328, or 1103 of the Bankruptcy Code or otherwise) and awarded by Final Order of the Bankruptcy Court pursuant to sections 330 or 503(b) or any other

provision of the Bankruptcy Code and any professional fees, costs, and expenses which have been allowed pursuant to this Plan or by Final Order by the Bankruptcy Court.

**2.55.     Protected Persons.**

As defined in Section 11.3 of this Plan.

**2.56.     Reorganized Debtor.**

As of the Effective Date of the Plan, the Debtor as reorganized under the terms of the Plan.

**2.57.     Rights of Action.**

Any avoidance, recovery, subordination, or other action of the Debtor, the Estate, or the Reorganized Debtor, any Cause of Action of the Debtor, the Estate, or Reorganized Debtor, or any objection to a Claim.

**2.58.     Schedules.**

The Debtor's Schedules of Assets and Liabilities, as may be amended or supplemented, and filed with the Bankruptcy Court in accordance with section 521 of the Bankruptcy Code.

**2.59.     Secured Claim.**

A Claim to the extent of the value, as may be determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code, of any interest in property of the Estate securing such Claim, or any Claim to the extent that it is subject to setoff pursuant to section 533 of the Bankruptcy Code.  To the extent the value of such interest is less than the Claim amount, such Claim is a Deficiency Claim.

**2.60.     Subordinated Claim.**

An Unsecured Clam that is subordinated pursuant to section 510 of the Bankruptcy Code or other applicable state law pursuant to a Final Order.

**2.61.     Unsecured Claim.**

A Claim not secured by a charge, mortgage, or lien against or interest in the Estate, including by not limited to any Deficiency Claim or any claim for damages resulting fromr ejection of an executory contract or lease.

### III.     CLASSIFICATION OF CLAIMS AND INTERESTS

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the United States Bankruptcy Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

Certain types of claims such as administrative expenses are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims

do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.

The United States Trustee fees will continue to be paid through the date this case is closed. Further, the Debtor shall file monthly operating reports through the date this case is closed.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|------|----------------------|--------------------|
| Professional Fees for Debtor's Counsel | $9800[1] | Debtor proposes to pay the remaining Professional Fees with monthly payments of $5000.00 until the Professional Fees for Debtor's counsel is paid. |
| Professional Fees for William West, P.C. as Accountant | $6290.85 | Debtor proposes to pay the remaining Professional Fees with monthly payments of $2500.00 until the Professional Fees is paid. |

### 3.1.       Class 1 - Priority Non- Tax Claims.

Class 1 is compromised of Allowed Priority Claims against CDR which include the claims of the Comptroller of Public Accounts and the Texas Workforce Commission.

### 3.2.       Class 2 - Priority Tax Claims.
Class 2 is compromised of Allowed Priority Tax Claims which includes the priority tax claim of the Internal Revenue Service.

### 3.3.       Class 3A and 3B - Secured Claims.
Class 3A is compromised of the Allowed Secured Claim filed by Allegiance Bank and Class 3B is compromised of the Allowed Secured Claim of the Internal Revenue Service.

### 3.4.       Class 4 - Ad Valorem Secured Claims.
Class 4 is compromised of Allowed Secured Ad Valorem Tax Claims against CDR which include the claim of the Austin County Appraisal District.

### 3.5.       Class 5 - Miscellaneous Secured Claims.
Class 5 is compromised of Can Capital.

### 3.6.       Class 6 - Secured Vehicular Claims.
Class 6 is compromised of the Allowed Secured Vehicular Claims against CDR which include the claims by Ford Motor Credit and Ally Financial.

### 3.7.       Class 7 - General Unsecured Claims.

---

[1] Counsel for Debtor has not yet submitted a Fee Application but will file one shortly thereafter.

Class 7 is compromised of the Allowed General Unsecured Claims against CDR.

**3.8.        Class 8 - Subordinated Claims.**

Class 8 is compromised of all Allowed Subordinated Claims against CDR.

**3.9.        Class 9 - Equity Interest Holders.**

Class 8 is compromised of all Allowed Equity Interests in CDR.


## IV.    IMPAIRMENT OF CLASSES AND RESOLUTION OF CLAIM CONTROVERSIES.

**4.1.        Impaired Classes.**

Class 1 - Priority Non-Tax Claims.

Class 2 - Priority Tax Claims.

Classes 3A and 3B - Secured Claims.

Class 4 - Ad Valorem Secured Claims.

Class 5 - Miscellaneous Secured Claims.

Class 6 - Secured Vehicular Claims.

Class 7 - General Unsecured Claims.

Class 8 - Subordinated Claims.


**4.2.    Unimpaired Classes.**

Holders of the Claims that are unimpaired are deemed to have accepted the proposed Plan and are not entitled to Vote on the Plan.  The following not entitled to vote on the plan either because such classes are not impaired or not entitled to vote pursuant to the Bankruptcy Code:

Class 9 - Equity Interest Holders of CDR.


## V.    TREATMENT OF IMPAIRED CLASSES

**5.1.    Treatment of Priority Non-Tax Claims.**

Holders of Priority Non-Tax Claims in Class 1 against the Debtor shall be paid their respective claim amounts in Cash in 24 monthly equal installments commencing 30 days from the Effective Date.

| Claimant | Scheduled Claim | Filed Claim |
|---|---|---|
| Comptroller of Public | | $17,500.00 |

| | |
|---|---|
| Accounts | |
| Texas Workforce | $4,065.35 |

**5.2.     Treatment of Priority Tax Claims.**

Holders of Priority Tax Claims in Class 2 against the Debtor shall be paid in Cash for 24 monthly installments of $1,000.00 with the remaining claimed amounts to be paid Pro Rata over 60 months with interest bearing at the Plan Rate and payments commencing 30 days from the Effective Date.

| Claimant | Scheduled Claim | Filed Claim |
|---|---|---|
| Internal Revenue Service | $212,310.47 | $212,310.47 |

**5.3.     Treatment of Secured Claims.**

In full and complete satisfaction, commencing 30 days from the Effective Date, holders of Claims in Class 3A are to receive 60 monthly Cash payments of $4,500.00 with interest bearing at 6.25% per annum with the remaining balance on the Claim due at the end of 60 months, with payments being applied towards the principal balance. Holders of Claims in Class 3A shall be entitled to receive the proceeds from the settlement or award from the Enterprise Lawsuit, with the proceeds being applied to the unpaid principal balance. Holders of Claims in Class 3B are to receive Cash payments for 24 monthly installments of $1,500.00 with the remaining claimed amounts to be paid pro rata over 96 months with interest bearing at the Plan Rate and payments commencing 30 days from the Effective Date. In the event of any failure of the Reorganized Debtor to timely make its required plan payments to the Holders of Allowed Claims in this Class, which shall constitute an event of default under the Plan as to these Claimants, they shall send Notice of Default to the Reorganized Debtor. If the default is not cured within thirty (30) days of the date of such notice, the Holders of Allowed Claims may proceed to collect all amounts owed pursuant to state law without further recourse to the Bankruptcy Court. The holders of Claims in Classes 3A and 3B are only required to send two (2) Notices of Default, and upon the third event of default, the taxing authorities may proceed to collect all amounts owed under state law without recourse to the Bankruptcy Court and without further notice.

| Claimant | Scheduled Claim | Filed Claim |
|---|---|---|
| Allegiance Bank | $584,350.08 | $580,047.60 |
| Internal Revenue Service | $380,138.84 | $380,138.84 |

**5.4.     Treatment of Ad Valorem Secured Claims.**

Holders of Allowed Claims in Class 4 shall be paid in Cash in 60 monthly equal installments commencing 30 days from the Effective Date with interest bearing per the applicable statutory rate. Holders of Allowed Claims in Class 4 shall retain all liens it currently holds, whether for pre-petition tax years or for the current tax year, on any property of the Debtor until it receives payment in full of all taxes, and interest owed to them under the provisions of this Plan, and their lien position shall not be diminished or primed by any Exit Financing, if any,

approved by the Court in conjunction with the confirmation of this Plan. In the event of any failure of the Reorganized Debtor to timely make its required plan payments to the Holders of Allowed Claims in this Class, which shall constitute an event of default under the Plan as to these Claimants, they shall send Notice of Default to the Reorganized Debtor. If the default is not cured within thirty (30) days of the date of such notice, the Holders of Allowed Claims may proceed to collect all amounts owed pursuant to state law without further recourse to the Bankruptcy Court. The taxing authorities are only required to send two (2) notices of default, and upon the third event of default, the taxing authorities may proceed to collect all amounts owed under state law without recourse to the Bankruptcy Court and without further notice.

| Claimant | Scheduled Claim | Filed Claim |
|---|---|---|
| Austin County | $46,310.56 | $43,671.41 |

**5.5.     Treatment of Miscellaneous Secured Claims.**

In full and complete satisfaction, the holders of Claims in Class 5 shall retain their liens and terms under the promissory note except as expressly modified by this Plan. Any existing defaults under any credit agreements shall be cancelled and have no legal effect; the holder of this claim shall receive monthly payments of $750.00 until Allowed Claims are paid in full, with interest to accrue at the rate of 0.00% per annum. The holders of Claims in Class 5 are only required to send two (2) Notices of Default, and upon the third event of default, the taxing authorities may proceed to collect all amounts owed under state law without recourse to the Bankruptcy Court and without further notice.

| Claimant | Scheduled Claim | Filed Claim |
|---|---|---|
| Can Capital | $71,870.92 | $77,470.92 |

**5.6.     Treatment of Secured Vehicular Claims.**

Holders of Allowed Claims in Class 6 shall be paid Pro Rata 72 monthly equal installments of Cash regarding their respective Claim amounts commencing 30 days from the Effective Date with interest bearing on the respective Allowed Claims at the Plan Rate. The holders of Claims in Class 6 are only required to send two (2) Notices of Default, and upon the third event of default, the taxing authorities may proceed to collect all amounts owed under state law without recourse to the Bankruptcy Court and without further notice.

| Claimant | Scheduled Claim | Filed Claim |
|---|---|---|
| Ford Motor Credit | $13,393.61 | $13,393.61 |
| Ford Motor Credit | $64,975.31 | $64,975.31 |
| Ford Motor Credit | $24,134.98 | $24,134.98 |
| Ford Motor Credit | $26,686.50 | $26,686.50 |
| Ford Motor Credit | $28,573.86 | $28,573.86 |
| Ally Bank | $56,293.62 | $56,293.62 |
| Ford Motor Credit | $74,359.38 | $74,359.38 |

**5.7.     Treatment of General Unsecured Claims.**

Holders of Allowed General Unsecured Claims shall be paid Pro Rata the Net Profits from CDR until the earlier of seven (7) years or all Allowed General Unsecured Claims are paid where all remaining unpaid Allowed General Unsecured Claims shall be treated per <u>Section 8.4</u> and <u>Section 11.2</u>.

| Claimant | Scheduled Claim | Filed Claim |
|---|---|---|
| MSC Industrial | | $782.74 |
| W.W. Grainger, Inc. | | $1,1386.02 |
| US Chemco M&M | | $158.48 |
| Rowe Equipment | | $1,350.80 |
| Industrial Piping | | $10,533.19 |
| Direct Energy Business | | $2,992.99 |
| NTB | | $1,789.22 |
| Unique Wire Weaving Co., Inc. | | $1,830.90 |
| Castle c/o Scott & Goldman | | $1,114.00 |
| A.J. Rod Company | | $2,766.93 |
| Uline Shipping Supply Specialist | | $2,766.93 |
| Camfil USA Inc. | | $2,403.94 |
| Toyota Financial | | $25,699.04 |
| Spencer Lopez | | $500,000.00 |
| CL Alloys | | $4,189.31 |
| TXU Energy | | $206.30 |
| Samuel, Son & Co. | | $8,924.60 |
| UPS | | $2,857.42 |
| UPS | | $1,271.88 |
| Samuel, Son & Co. | | $8,924.60 |
| Texas Steel Processing | | $2,096.00 |
| Pitney Bowes | | $1,642.89 |
| XPO Logistics | | $5,251.41 |
| Blue Tarp Financial In | | $1,067.79 |
| Fastenal Company | | $2,779.61 |
| Ht. Hawley Insurance | | $1,010,100.00 |
| Airgas USA | | $2,140.96 |
| Spencer Lopez | | $500,00.00 |
| Metaltech Service | | $1,116.00 |
| Dore' Law Group | | $10,570.45 |
| Michael W. Ayer | | $88,000.00 |

## VI.     TREATMENT OF UNIMPAIRED CLASSES

Holders of the Claims that are unimpaired are deemed to have accepted the proposed Plan and are not entitled to Vote on the Plan.  The following not entitled to vote on the plan either because such classes are not impaired or not entitled to vote pursuant to the Bankruptcy Code:

Class 8 - Equity Interest Holders of CDR will retain their stock in the Reorganized Debtor.

## VII.     MEANS OF IMPLEMENTATION OF PLAN

Debtor proposes to fund payments under this Plan through continued operations of its business.  Debtor's income is dependent on the demand for oil production in the United States and based on the current price of crude oil and forecasts for the price of crude oil, Debtor believes it will be able to make all payments contemplated under this Plan; Debtor also anticipates an award from its Condemnation lawsuit[2] where the proceeds from the award or settlement will be used to pay its Secured Creditors. Attached hereto as **Exhibit 1** are Debtor's anticipated income and expenses for the next three (3) years.

## VIII.   CLAIM OBJECTION PROCEDURES, TREATMENT OF DISPUTED CLAIMS, AND PROCEDURES FOR ASSERTING CLAIMS

**8.1.          Objection Process.**

Unless otherwise provided by the Bankruptcy Court, the Debtor shall file and serve all objections to Claims and Equity Interests the later of (i) ninety (90) days after the Effective Date; (ii) the date on which a proof of claim, proof of interest, or request for payment is filed with the Bankruptcy Court; or (iii) such other date as may be approved by the Bankruptcy Court after notice and hearing.

**8.2.          Filing of Claims and Causes of Action.**

Debtor reserves the exclusive right to prosecute any and all Claims and Causes of Action of the Debtor and the Estate.

**8.3.          Disputed Claim Reserve.**

A Disputed Claims Reserve shall be established by the Debtor for treatment of Disputed Claims and held in a separate bank account from all other funds.  Debtor will deposit into the Disputed Claims Reserve an amount equal to the Pro Rata share of Distribution allocable to such Disputed Claims, in accordance with the distributions as provided for in the Plan, as if such Claims were Allowed Claims pending a determination of their entitled under the terms of the Plan.  Once the Disputed Claim is determined by Final Order or settlement to be an Allowed Claim, the Debtor is authorized to pay the Allowed Amount of such Claim from the Disputed Claim Reserve.

---

[2] Enterprise Crude Pipeline LLC filed a condemnation proceeding  (the "Enterprise Lawsuit")against CDR seeking to acquire a permanent right-of-way, easement, and temporary workspace easement across CDR's Sealy Property. The Enterprise Lawsuit is still pending and CDR and Enterprise are in negotiations regarding a possible settlement.

**8.4.        Distribution to Holders of Disputed Claims.**

Within twenty (20) Business Days after a Disputed Claim is deemed an Allowed Claim Claim, any Distributions reserved for such Allowed Claim shall be released from the Disputed Claims Reserve and delivered to the holder of such Allowed Claim.  In the event that the Disputed Claim is disallowed in its entirety or reduced in portion, the disallowed or reduced portion of the shall be distributed from the Disputed Claim Reserve to holders of Allowed Claims without further approval.

**8.5.        Disallowance of Late Filed Proofs of Claims.**

Except as otherwise provided in the Plan, any proof of claim filed after the Bar Date is hereby disallowed.

**8.6.        Distribution Process.**

**8.6.1.  Record Date for Claims.**

Record date for Distributions to Allowed Claims under this Plan shall be the date the Bankruptcy Court enters its Order approving the Disclosure Statement and Debtor will rely on the claims docket maintain by the Clerk for proof of claims filed in this case.

**8.6.2.  Distributions to Holders of Allowed Claims.**

Distributions to holders of Allowed Claims will be made to the address of each such holder as set forth on the proof of claims filed by these holders of Allowed Claims or the last known address if no proof of claim was filed, unless Debtor received written notification of a change in address.  If the holder's Distribution is returned undeliverable, it will be treated as a disallowed Disputed Claim as provided in <u>Section 8.4.</u>

**8.6.3.  Unclaimed Distributions.**

Debtor will file a notice of undeliverable Distribution with the Bankruptcy Court within thirty (30) days of the returned Distribution.  All claims for undeliverable Distributions must be made no later than forty-five (45) days from the date of the filing of the notice, and after such date, the unclaimed Distribution will be distributed to holders of Allowed Claims per <u>Section 2.4</u> and the remaining Claim of the holder of the undeliverable Distribution will be discharged and forever barred.

**8.6.4.  Undeposited Checks.**

Checks issued with respect to Distributions for Allowed Claims will be null and void if not negotiated within ninety (90) days after the date of issuance.  Distributions with respect to un-negotiated checks will treated per <u>Section 2.4</u> and the remaining Claim of the holder of the unnegotiated check will be discharged and forever barred.

## IX.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

**9.1.    Rejection of Executory Contracts and Unexpired Leases.**

All executory contracts and unexpired leases that are not assumed under this Plan are rejected, unless otherwise provided for in the Plan or Confirmation Order, or any other Order of the Court entered prior to the Effective Date.

**9.2.    Assumed Executory Contracts and Unexpired Leases.**

Each executory contract and unexpired lease that is assumed will include (a) all amendments, modifications, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or with respect to any executory or unexpired lease that relates to the use, ability to acquire, or occupy real property, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vaults, tunnel or bridge agreements, or franchises, and any other equity interests in real estate or rights *in rem* related to such premises, unless any of the foregoing agreements have been rejected pursuant to an order of the Bankruptcy Court or are subject of a motion to reject filed on or before the Confirmation Date.   Amendments, modifications, supplements, and restatements to any prepetition executory contracts or unexpired leases that have been executed by the Debtor during the Chapter 11 shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may have arise in connection.

**9.3.    Claims Based on Rejection of Executory Contracts or Unexpired Leases.**

Damages arising from the rejection of an executory contract or unexpired lease shall be treated as a General Unsecured Claim against the Debtor unless subordinated by applicable law. Any Claim for damages arising from a rejected executory contract or unexpired lease must be asserted in a proof of claim filed with the Bankruptcy Court no later than twenty (20) days than the earlier of (i) the date of entry of an order of the Bankruptcy Court approving the rejection or (ii) the Effective Date.

**9.4.    Reservation of Rights.**

Nothing contained in  his Plan shall constitute an admission by the Debtor that any such contract or lease is an executory contract or unexpired lease or that Debtor has any liability arising under any executory contract or unexpired lease.  Should a dispute arise as to whether a contract is an executory contract or unexpired lease, the Debtor or Reorganized Debtor shall have thirty (30) days following the entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.


## X.    REJECTION OF CLASSES OF CLAIMS.

**10.1.    Impaired Classes to Vote.**

Each impaired class of Claims shall be entitled to vote separately to accept or reject the Plan.  A holder of a Disputed Claim which has not been temporarily allowed for voting purposes may vote only such Disputed Claim in an amount equal to the portion, if any, of such Claim shown as fixed liquidated, or undisputed in the Debtor's Schedules and is not the subject of any subsequently filed objection as to such fixed, liquidated, undisputed amount.

**10.2.    Acceptance by Class.**

A class is deemed to have accepted the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number of Allowed Claims have such class have voted to accept or reject the Plan.

**10.3.    Reservation of Cramdown.**

In the event that any impaired class shall fail to accept the Plan, the Debtor reserves the right to request the Bankruptcy Court to confirm in accordance with section 1129(b) of the Bankruptcy Code.

# XI.    EFFECT OF CONFIRMATION

**11.1.    Legally Binding Effect.**

The provisions of this Plan shall bind all Creditors, Interest Holders, whether or not they accepted the Plan.  On or after the Effective Date, all holders of Claims shall be precluded and enjoined from asserting any Claim (i) against the Debtor or Reorganized Debtor and (ii) any derivative claims, including claims against third parties asserting alter ego claims, fraudulent transfer claims, or any other type of successor liability.

**11.2.    Discharge of Debtor.**

As provided for in § 1141 of the Bankruptcy Code, the provisions of Debtor's Plan shall bind the Debtor and any creditor under the Plan, whether or not the claims of the creditor is impaired under the Plan and whether or not the creditor has accepted the Plan.  As provided for in § 1141(b) of the Bankruptcy Code, confirmation of the Debtor's Plan vests all of the property of the estate in the Debtor.  After confirmation of the Debtor's Plan, all property of the Debtor dealt with by the Plan (which includes all property of the Debtor) is free and clear of all liens, claims, and interests of the creditors and equity security holders, except to the extent provided in this Plan.

The rights afforded in the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all claims of any nature whatsoever occurring on or prior to the confirmation date, including any interest accrued thereon from and after the petition date, against Debtor, or any of its assets or properties.  Except as otherwise provided herein, upon the Effective Date, in accordance with § 1141 of the Code, all such claims against Debtor shall be satisfied, discharged, and released in full.  Except as otherwise provided herein, all creditors shall be precluded from asserting against Debtor any other or further claim based upon any act or omission, transaction, or other activity of any kind or nature occurring on or prior to the confirmation date.

Entry of the Confirmation Order will operate as a resolution, as of the Effective Date, of all pending legal proceedings against the Debtor and its assets and properties not yet instituted, except as otherwise provided in this Plan.  Except as expressly provided in this Plan, all persons or entities who have held, hold, or may hold Claims against the Debtor are permanently enjoined on or after the Effective Date from (a) commencing or continuing in any matter any action or other proceeding of any kind against the Debtor, Reorganized Debtor, or parties personally guarantying such Claims; (b) the enforcement, attachment, collection or recovery by any matter or means of any judgment, award, decree or order with respect to any such Claim against the Debtor or Reorganized Debtor or its property; (c) the creation, perfection, or enforcement of any encumbrance of any kind against the Debtor or Reorganized Debtor or its property; (d) assertion of any right of subrogation of any kind against any obligation due to the Debtor or Reorganized Debtor with respect to any Claim; (e) the assertion of any right of setoff or recoupment against the Debtor or Reorganized Debtor and its Property.  Unless otherwise provided, all injunctions or

automatic stays provided for in this case pursuant to sections 105 or 362 of the Bankruptcy Court and in inexistence on the Confirmation Date will remain in full force and effect until the Effective Date.  Subject to the terms of the Plan and Confirmation Order, any default by the Debtor with respect to any Claim that existed immediately prior to the Chapter 11 shall be deemed satisfied on the Effective Date.

**11.3.   Limited Protection of Certain Parties.**

Neither the Debtor, Reorganized Debtor, or their employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by the Debtor or Reorganized Debtor (collectively "Protected Persons") shall have or incur any liability to any person or entity under any theory of liability for any act or omission occurring on or after the Petition Date in connection or related to the Debtor, Chapter 11 case, including but not limited to formulating, preparing, disseminating, implementing, confirming, consummating or administering this Plan (including soliciting acceptances or rejections of) or the Disclosure Statement, or any contract, instrument, release or other agreement entered into in connection with this Plan, except for acts constituting willful misconduct, gross negligence, or *ulra vires* activity and in all respects such Protected Persons shall be entitled to rely in good faith upon the advice of counsel. In any action, suit or proceeding by any person or entity contesting any action or non action by any Protected Person for willful misconduct, gross negligence, or *ulra vires* activity not being in good faith, the reasonable attorneys' fees and costs of the prevailing party will be paid by the losing party.

**11.4.   Indemnification.**

The Debtor shall indemnify each Person identified as a Protected Person per Section 10.3 against any and all costs and expense (including attorneys' fees) incurred by any of them in defending against post-Confirmation Date claims that are based on actions allegedly taken or not taken in their respective capacities relating to the Debtor, provided no Protected Person shall be entitled to indemnification under this Plan for the costs and expenses of defending a cause of action in which it ultimately judicially determined that such Protected Person was grossly negligent or acted fraudulently or with willful misconduct in performing such Protected Person's duties.  Any Protected Person entitled to indemnification under this section shall have priority in distribution right senior to the holders of Allowed General Unsecured Claims.

**11.5.   Anti-Discrimination.**

A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against the Debtor or another person with whom the Debtor has been or are associated or affiliated solely because of the commencement, continuation, or termination of the case or because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a Governmental Unit.  A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to the Debtor based upon any requirement that the Debtor place a bond or other surety obligation with such governmental unit as a condition of receipt of such a license, permit, charter, franchise, or other similar grant to the Debtor.

**11.6.    Preservation of Claims and Rights.**

Confirmation of the Plan effects no settlement, compromise, waiver or release of any Claim, Cause of Action, Right of Action or claim for relief unless the Plan or the Confirmation specifically and unambiguously provide so.   The non-disclosure or non-discussion of any particular Claim, Cause of Action, Right of Action or claim for relief is not and shall not be construed as a settlement, compromise, waiver, or release of any such Claim, Cause of Action, Right of Action or claim for relief.

## XII.    RETENTION OF JURISDICTION

The Court shall retain and have exclusive jurisdiction over this Chapter 11 Case to the maximum extent as provided by law for the following purposes subsequent to Confirmation of the Debtor's Plan: (i) to determine any and all objections to the allowance and classification of Claims or Interests; (ii) to determine the validity and priority of any Lien; (iii) to determine the Allowed Amount of any Claim, whether secured or unsecured; (iv) to allow any and all applications for allowances of compensation and reimbursement of expenses payable from the estate; (v) to determine any and all applications or motions pending before the Court on the Effective Date, including but not limited to, any motions for the rejection, assumption and or assignment of any executory contract or unexpired lease; (vi) to consider and approve any modification of the Plan, remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Court, including the Confirmation Order or any transactions or payments contemplated in the Plan; (vii) to consider and act on the compromise or settlement of any claim or cause of action by or against the Debtor; (viii) to issue orders in aid of the execution and implementation of the Plan and Confirmation Order; and (ix) to hear and determine matters concerning federal or local taxes.

## XIII.    MISCELLANEOUS PROVISIONS

**13.1.    Bar Date for Administrative Claims.**

No Administrative Claim, other than Professional Fees and United States Trustee fees, will be paid unless the holder of such Administrative Claim has filed an application for payment of such Administrative Claim on or before the Administrative Claim Bar Date.  Upon the filing of any application for payment, the entity seeking payment of an Administrative Claim shall provide notice by United States Mail.  Any Administrative Claim, other than Professional Fees and United States Trustee fees, not filed in accordance with this section shall be barred and the Debtor shall have no liability for payment of any such Administrative Claim.

**13.2.    Objections to Administrative Claims.**

Objections to Applications for payment of Administrative Claims may be filed by any party in interest.  In order to be considered, such objections must be filed on or before the twenty-first (21st) day following the date on which the application was filed.  Any objections will be considered by the Bankruptcy Court.

**13.3.    Payment of Professional Fees.**

Each holder of a Professional Fee Claim shall be paid in respect of such Professional Fee Claim in Cash, in full, on the Effective Date, unless otherwise provided for in the Plan, or if such Claim has not been approved by the Bankruptcy Court on or before the Effective Date, within thirty (30) days after Bankruptcy Court approval of the Professional Fee.  Final fee applications for any Professional Fee Claim that has not been approved as of the Effective Date shall be filed within thirty (30) days of the Effective Date and such applications and objections thereto shall be filed in accordance with and comply with the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules.

**13.4.   Payment of United States Trustee Fees.**

Within thirty (30) days of the date that such payments are due, the Debtor shall pay all amounts owed to the United States Trustee as fees and costs imposed in connection with this Chapter 11 case.

**13.5.   Satisfaction of Liabilities.**

Treatment of all Claims and Interest herein shall be in exchange for complete satisfaction and release of all Claims and Interests of any nature whatsoever against the Debtor, Reorganized Debtor, or entities or individuals guarantying such Claims and Interests.  Neither the Debtor nor the Reorganized Debtor shall be responsible for any pre-Effective Date obligations of the Debtor.

**13.6.   Amendment of Plan.**

The Plan may be amended or modified by the Debtor after the Effective Date as provided in section 1127 of the Bankruptcy Code.

**13.7.   Right to Seek Further Orders.**

Notwithstanding confirmation of this Plan, Debtor reserves the right to seek further Orders from the Bankruptcy Court relating to this Chapter 11 case.

**13.8.   Withdrawal of Plan.**

Debtor reserves the right to withdraw the Plan prior to the Confirmation Hearing.

**13.9.   Reservation of Claims.**

The Debtor reserves any and all claims and rights against any and all third parties, whether such claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, to any and all Claims and Causes of Action for relief that the Debtor may have against any director, officer, any insurer under any insurance policy, or any other person or entity.  Entry of the Confirmation Order shall not constitute *res judicata* or any bar, estoppel, or inhibit any actions by the Debtor relating to any Claims or Causes of Action.

**13.10.  Dates.**

The provisions of Bankruptcy Rule 9006 shall govern the calculation of any dates or deadlines referred to in the Plan.

**13.11.  Governing Law.**

Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to any conflicts of law.

### 13.12. Rules of Construction.

Unless otherwise specified, all section, article, schedule or exhibit references in this Plan are to the respective section in, article of, or schedule or exhibit to, this Plan. The rules of construction as provided in section 102 of the Bankruptcy Code shall apply to the construction of this Plan except section 102(5) of the Bankruptcy Code. The headings in this Plan are for convenience of reference and shall not limit or otherwise affect the provisions of this Plan.

### 13.13. Conflict.

Except as provided for in the Plan, to the extent there are any inconsistencies between the Confirmation Order and the Plan and Disclosure Statement, any other agreement entered into by the Debtor and any third parties, the Plan controls the Disclosure Statement and any such agreements and the Confirmation Order (and any other orders of the Bankruptcy Court) controls the Plan.

### 13.14. Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 13.15. Setoffs.

The Debtor may but shall not be required to set off against any Claims and payments to be made pursuant to the Plan in respect of such Claims, any and all debts, liabilities and claims of every type and nature that the Estate may have against the Holder of any Claim, but neither the failure to do so nor the Allowance of any such Claims, whether pursuant to the Plan or otherwise, shall constitute a waiver or release by the Debtor of any such claims it may have against such Holder of any Claim, and all such claims shall be reserved for and retained by the Debtor.

**[Signature Page Follows]**

Dated: June 7, 2017

**CDR STRAINERS & FILTERS, INC.**

By: */s/Blanca Croson*
      Blanca Croson
      President

**CORRAL TRAN SINGH, LLP**

By: */s/Susan Tran*
      Adam Corral | TBN: 24080404
      Susan Tran | TBN: 24075648
      Brendon Singh | TBN: 24075646
      1010 Lamar, Suite 1160
      Houston TX 77002
      Ph: (832) 975-7300
      Fax: (832) 975-7301
      Susan.Tran@ctsattorneys.com

**ATTORNEYS FOR THE DEBTOR AND
DEBTOR IN POSSESSION
CDR STRAINERS & FILTERS, INC.**

**Budget**

| | | | | | | | CDR STRAINERS & FILTERS, INC. | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | SALES PROJECTIONS | | | | | | |

| YEAR | Jan | Feb | Mar | Apr | May | June | Jul | Aug | Sept | Oct. | Nov. | Dec. | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2017 New Monthly Forecast | $161,280 | $189,911 | $209,063 | $176,813 | $238,145 | $223,745 | $223,000 | $229,046 | $229,046 | $220,625 | $220,625 | $185,000 | $2,506,299 |
| 2018 New Monthly Forecast | $188,205 | $202,159 | $227,538 | $195,223.00 | $286,322 | $307,638.00 | $255,842.00 | $299,527 | $237,855.00 | $302,587 | $269,501 | $227,543 | $3,000,000 |
| 2019 New Montly Forecast | $237,522 | $252,961 | $302,577 | $276,088 | $347,692 | $301,856 | $317,959 | $325,624 | $259,682 | $357,631 | $279,622 | $241,075 | $3,500,289.00 |

| | | | | | | MONTHLY EXPENSES | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

| | Jan. | Feb. | Mar | Apr | May | June | Jul | Aug | Sept | Oct. | Nov. | Dec. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Shop Supplies | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | 1,000.00 |
| Shop Consumables | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | 1,000.00 |
| Equipment / Tools | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | 1,000.00 |
| Payroll | $ 80,000.00 | $ 80,000.00 | $ 80,000.00 | $ 85,000.00 | $ 92,000.00 | $ 92,000.00 | $ 92,000.00 | $ 92,000.00 | $ 92,000.00 | $ 92,000.00 | $ 92,000.00 | 85,000.00 |
| Payroll Taxes | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 | $ 21,000.00 | $ 24,000.00 | $ 24,000.00 | $ 24,000.00 | $ 24,000.00 | $ 24,000.00 | $ 24,000.00 | $ 24,000.00 | 20,000.00 |
| Raw Materials | $ 35,000.00 | $ 35,000.00 | $ 35,000.00 | $ 35,000.00 | $ 46,000.00 | $ 46,000.00 | $ 35,000.00 | $ 46,000.00 | $ 35,000.00 | $ 46,000.00 | $ 35,000.00 | 35,000.00 |
| In Bound Freight | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | 500.00 |
| Finished Goods For Resale | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | 500.00 |
| Shiping Supplies | $ 500.00 | $ 500.00 | $ 500.00 | $ 200.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | 500.00 |
| Outbound Shipping & Freight | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | 500.00 |
| Trade Shows | | | | $ 800.00 | | $ 800.00 | | $ 800.00 | | $ 800.00 | | 800.00 |
| Automobile Expense | $ 3,500.00 | $ 3,500.00 | $ 3,500.00 | $ 3,500.00 | $ 3,500.00 | $ 3,500.00 | $ 3,500.00 | $ 3,500.00 | $ 3,500.00 | $ 3,500.00 | $ 3,500.00 | 3,500.00 |
| Meals and Entertainment | $ 100.00 | $ 100.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 100.00 | $ 100.00 | $ 100.00 | 100.00 |
| Business Licenses & Permits | $ 400.00 | $ 400.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | 600.00 |
| Insurance Trucks and Building | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | 4,500.00 |
| Taxes | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | 2,000.00 |
| Employee Expense | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | 130.00 |
| Office Supplies | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | 200.00 |
| Bank Service Charges | | | | | | | | | | | | |
| Charitable Contributions | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | 200.00 |
| Computer and Internet Expenses | $ 600.00 | | $ 600.00 | | $ 600.00 | | $ 600.00 | | $ 600.00 | | $ 600.00 | |
| Continuing Education | | | | $ 1,500.00 | | $ 1,500.00 | | $ 1,500.00 | | $ 1,500.00 | | 1,500.00 |
| Dues and Subscriptions | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 800.00 | $ 800.00 | $ 800.00 | $ 800.00 | $ 800.00 | $ 800.00 | 800.00 |
| Janitorial Expense | $ 200.00 | $ 200.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | 500.00 |
| Medical | $ 600.00 | $ 600.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | 1,000.00 |
| Office Expense | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | 500.00 |
| Professional Fees | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | 6,000.00 |
| Rent Expense | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | 4,500.00 |
| Repairs & Maintenance | $ 200.00 | $ 200.00 | $ 500.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 500.00 | $ 500.00 | $ 500.00 | 500.00 |
| Utilities | $ 8,000.00 | $ 8,000.00 | $ 8,000.00 | $ 8,000.00 | $ 10,000.00 | $ 10,000.00 | $ 12,000.00 | $ 12,000.00 | $ 8,000.00 | $ 10,000.00 | $ 8,000.00 | 8,000.00 |
| Total | $ 172,130.00 | $ 171,530.00 | $ 173,430.00 | $ 181,330.00 | $ 202,930.00 | $ 204,930.00 | $ 194,230.00 | $ 206,930.00 | $ 189,630.00 | $ 204,330.00 | $ 189,630.00 | 180,330.00 |